CANNON, Internal Revenue Collector, v. ELK CREEK LUMBER CO.

SAME v. SIUSLAW TIMBER CO.

(Circuit Court of Appeals, Seventh Circuit. October 22, 1925.)

Nos. 3601, 3602.

Internal revenue ☞9—Corporations organized to bid in mortgaged timber lands held "not engaged in business."

Corporations organized to bid in timber lands subject to mortgages securing bonds issued thereunder, and which held lands bid in awaiting favorable opportunity to dispose of them, paid taxes thereon, patrolled and protected lands without cutting or otherwise using timber, kept a few houses occupied at normal rent to prevent them going to ruin, but kept no office and paid officers no salaries, held "not engaged in business" within Revenue Act 1918, § 1000, subd. c. (Comp. St. Ann. Supp. 1919, § 5980n).

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Separate actions by the Elk Creek Lumber Company and by the Siuslaw Timber Company against John C. Cannon, Collector of Internal Revenue for the First Collection District of Illinois. Judgments for plaintiffs, and defendant brings error. Affirmed.

T. O. Webb, Sp. Asst. U. S. Atty. Gen., for plaintiff in error.

Melvin M. Hawley, of Chicago, Ill., for defendants in error.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

ALSCHULER, Circuit Judge. The District Court awarded judgments to defendants in error, respectively, for their recovery of taxes found wrongfully to have been collected from them as capital stock tax under section 1000 (a) of the Revenue Act of 1918 (Comp. St. Ann. Supp. 1919, § 5980n).

The facts of the cases are essentially similar. Defendants in error were corporations organized for the purpose of bidding in under mortgage sale large tracts of timber lands subject to the mortgages which secured payments of bonds issued thereunder. The stockholders were the bondholders in proportion to their bond holdings. The lands were bid in, and the corporations continued to hold the lands, awaiting favorable opportunity for disposing of them, and distributing the proceeds, in the meantime paying the taxes, patrolling and protecting them from fire and trespassers, surveying the land and cruising the timber so that the boundaries and the timber possibilities might be known, but not cutting any timber or renting or otherwise making use of the timber or land, save in one case, keeping a few houses on some of it occupied at nominal rent to prevent their going to ruin.

The corporations kept no office of their own; their officers received no salary or other emolument. The operation of the timber properties as such was not in contemplation, and no income or profit therefrom was expected or intended, save that it was hoped to dispose of the properties as stated, and efforts were made to interest others in their purchase, failing in which the corporations might operate them if sufficient additional outside capital therefor could be secured. This was the situation ever since the corporations were formed, and for more than one year next before June 30 preceding the alleged accrual of the tax.

Section 1000 (c) provides: "The taxes imposed by this section shall not apply in any year to any corporation which was not engaged in business * * * during the preceding year ending June 30. * * *"

Neither the hope that some day some one will come along and buy them out, and thus enable them to distribute the proceeds among the original bondholders, coupled with some effort to bring this about, nor the alternative hope that some time some one will supply them with sufficient capital to operate the properties, is being "engaged in business" within the meaning of the quoted section.

Each of the judgments is affirmed.