### FINK COAL & COKE CO. v. HEINER, Collector of Internal Revenue.

District Court, W. D. Pennsylvania.
January 17, 1928.

No. 3528.

Internal revenue ☞9(23)—Corporation merely maintaining its corporate existence and holding mining lands held not "engaged in business" as respects capital stock tax; "business" (Revenue Acts 1918, 1921, §§ 1000(a)(1), 1000(b); Comp. St. §§ 5980n(a)(1), 5980n(b).

Corporation organized, among other things, to hold and sell real estate and mine and ship coal, which, because of failure of expected transportation facilities, never opened a mine, but merely held title to land, paid taxes thereon, held directors' and stockholders' meetings, and assessed stockholders to meet certain expenses, *held* not "engaged in business" so as to be liable for capital stock tax under Revenue Acts 1918, 1921, §§ 1000(a)(1), 1000(b), Comp. St. §§ 5980n(a)(1), 5980n(b); "business" as used in statute meaning that which occupies time, attention, and labor of men for the purpose of a livelihood or profit, and taxable status of corporation being determined by scope of its actual activities rather than by its possible activities under its charter powers.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Business; Engage.]

At Law. Action by the Fink Coal & Coke Company, a corporation organized and existing under the laws of the State of West Virginia, against D. B. Heiner, Collector of Internal Revenue for the Twenty-Third District of Pennsylvania. Judgment for plaintiff.

Smith, Shaw & McClay, of Pittsburgh, Pa., and Allan D. Williams, of Uniontown, Pa., for plaintiff.

John D. Meyer, U. S. Atty., of Pittsburgh, Pa., for defendant.

GIBSON, District Judge. The plaintiff, by the present action, seeks to recover the sum of $1,515.25, with interest, the principal amount being the total of certain payments alleged to have been wrongly exacted from plaintiff by defendant as capital stock taxes due the United States for the taxable period years ending June 30, in the years 1919 to 1925, each inclusive. The case was heard by the court without a jury.

The following facts were disclosed by the testimony:

The plaintiff was incorporated under the laws of West Virginia in 1902. Its charter authorized:

"The purchase and holding of real estate and sale of the same; the mining and shipping of coal; the manufacture of coal into coke and other products, and marketing the same; the building of houses and other buildings for the accommodation of employees and others; the constructing and laying of sidings, turnouts, and switches for connecting their work with railroads; the constructing and maintaining magnetic telegraph and telephone lines between its works and other points; the establishing of gas and water works; the manufacture of electricity from coal or other materials; the carrying on of mercantile business."

At the time the plaintiff company was incorporated it held about 8,000 acres of coal in Gilmer and Lewis counties, W. Va. From time to time thereafter, until 1906, it acquired about 2,000 additional acres. When the company was incorporated a movement was on foot to build a railroad which would have had its tracks close to the company's holdings. The grading for this road had been partly completed when the plaintiff company was organized, but shortly thereafter the project was abandoned, and the abandonment left the plaintiff without any practicable method of transporting its coal to market, as the nearest railroad was 7 or 8 miles from plaintiff's acreage, and the river which lies near it is not navigable above a point 30 miles below it. At the time of incorporation, the main object of the plaintiff was to mine and market its coal, but, the expected transportation facilities having failed, it never opened a mine. During the years for which the taxes, the subject-matter of the present suit, were demanded and paid, plaintiff nei-

ther bought nor sold either coal or coal lands. During such years the stockholders at several of the yearly meetings authorized the directors to sell or option its coal properties at prices in excess of the original purchase price, but no options were ever given. Within the years in question, plaintiff never advertised its property for sale nor put it in the hands of a broker for that purpose. Owing to the lack of transportation facilities, no market for coal lands then existed in the locality of plaintiff's holdings. The sum total of the activities of the company during the taxable years 1919 to 1925, inclusive, consisted of the yearly meetings of the directors and stockholders, and the assessment of the stockholders to meet the expenses of the company. The expenses consisted of the payment of taxes, the payment of salaries of $100 and $15 yearly to its treasurer and secretary, respectively, and the payment for printing and postage in connection with letters relevant to the assessment of the stockholders. The company maintained no office. Its books consisted of a minute book, an individual ledger containing the account with each stockholder, a bank book and a check book. At the directors' and stockholders' meetings no business was transacted other than the election of officers, the reading of the treasurer's report, and the annual assessment upon the stockholders, and, in several meetings, the authorization to option the properties mentioned, supra.

During the period for which taxes were collected by the defendant, the stockholders of plaintiff company hoped—possibly expected—that conditions would change at some future time, and by that change they might be able to mine their coal, or sell their coal lands, at a profit.

The sole controversy which has arisen from the foregoing facts is based upon varying interpretations of section 1000(a)(1) of the Revenue Acts of 1918 and 1921. Comp. St. § 5980n(a)(1). Section 1000(a)(1) imposes upon domestic corporations "a special excise tax with respect to carrying on or doing business." Section 1000(b) (Comp. St. § 5980n(b) provides:

"Taxes imposed by this section shall not apply in any year to any corporation which was not engaged in business * * * during the preceding year ending June 30. * * * "

The plaintiff contends that it was not "engaged in business," as its entire effort was confined to the maintenance of its corporate existence and the mere holding of its undeveloped coal acreage. The defendant urges that the plaintiff company was organized for profit, that the holding of coal lands was one of its purposes, as set out in its charter, and that such holding of coal lands, with the expectation or hope of selling them at a profit, and with the will to sell them presently upon receipt of a satisfactory offer, constitutes "carrying on or doing business" within the purview of the taxing statutes.

The accepted definition of "business," as used in the taxing statute, is:

"That which occupies the time, attention and labor of men for the purpose of a livelihood or profit." Corporation Tax Cases, 220 U. S. 107, 31 S. Ct. 361, 55 L. Ed. 428.

An examination of cases before the Supreme Court, wherein the present or a like taxing statute was interpreted, will disclose the fact that none of such cases is exactly parallel in facts with the instant case. In its decisions the Supreme Court held certain corporations to be "engaged in business" and others not to be so engaged. Mr. Justice Day, in the opinion of the court in Von Baumbach v. Sargent Land Co., 242 U. S. 503, 37 S. Ct. 201, 61 L. Ed. 460, undertook to lay down the general rule upon which the court had acted in arriving at its conclusions. That rule follows:

"It is evident, from what this court has said in dealing with the former cases, that the decision in each instance must depend upon the particular facts before the court. The fair test to be derived from a consideration of all of them is between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails and doing only the acts necessary to continue that status, and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain and such activities as are essential to those purposes."

Each of the parties in the instant case points to the test laid down by Mr. Justice Day as supporting his contention. The plaintiff asserts that the testimony clearly shows that the main purpose of the Fink Coal & Coke Company was to operate a mine and market its coal, and that the failure of its expected transportation facilities caused it to reduce "its activities to the owning and holding of property, * * * and doing only the acts necessary to continue that status." The defendant, on the other hand, appeals to the testimony to establish the claim that one of the charter functions of the plaintiff company was the purchase and holding of real estate and the sale of the same, and that during the taxable periods in suit the plaintiff was holding its coal lands for the purpose

of selling them at a profit, thus carrying out, in part at least, the purpose for which it was organized. Defendant further urges that the test of corporations not engaged in business is not met by the plaintiff company, in that it has not "reduced its activities to the owning and holding of property." The contention is that it still possesses the power to sell, and thus pursue gain, and is not to be classed with dormant corporations which have not only reduced their activities to the holding of real estate, but have parted with their power to sell it.

By this last-mentioned contention, the defendant we think is endeavoring to introduce into the test an element not actually laid down by the Supreme Court. True, some of the corporations held not to have been engaged in business had reduced their charter powers of sale, or had parted with their power over their real estate by very long-term leases, and comment upon the fact had been made in the opinions of the court, but only for the purpose of showing entire lack of taxable activity on the part of such corporations; but nowhere has that court laid down the proposition that control over the property held must be gone before the corporation may claim release from the tax. The word "reduced," doubtless adopted from the regulations promulgated by the Treasury Department by authority of the Tax Act, is synonymous with the word "confined," as used in Von Baumbach v. Sargent Land Co., supra, and prior decisions. The status of a corporation, as taxable or not, is to be determined by the scope of its actual activities rather than by its possible activities under its charter powers. In the McCoach v. Minehill Railway Co. Case, 228 U. S. 295, 33 S. Ct. 419, 57 L. Ed. 842, the railway company had leased its road, but had kept its power of eminent domain and in the lease agreed to exercise it upon proper demand of its lessee. The reservation of this power was pointed out by the opponent of the railway company as proof of the fact that the company had not reduced its activities to the holding of property and doing only the acts necessary to continue that status. We quote from the opinion:

"It should be mentioned that there is nothing in the record to show that during the taxing years in question the company exercised its power of eminent domain, or put in force any other special corporate power, in aid of the business of the lessee. We therefore do not pass upon the question whether, if it should do so, it would be taxable under the act in question."

Mr. Justice Holmes, in United States v. Emery, Bird, Thayer Realty Co., 237 U. S. 28, 35 S. Ct. 499, 59 L. Ed. 825, said:

"The question is rather what the corporation is doing than what it could do, ([McCoach v. Minehill S. H. R. Co.] 228 U. S. 305, 306 [33 S. Ct. 419, 57 L. Ed. 842]), but looking even to its powers they are limited very nearly to the necessary incidents of holding a specific tract of land. The possible sale of the whole would be merely the winding up of the corporation. That of a part would signify that the Dry Goods Company did not need it."

A case almost parallel with the instant case is Lane Timber Co. v. Hynson, 4 F.(2d) 666 (C. C. A. 5th Ct.), 40 A. L. R. 1448. The only distinction worthy of note possibly is that, in that case, agents were employed and made continuous efforts to sell the timber property, while in the instant case no agents were employed and no effort was made to sell. The court held that the company was not liable for the tax. Bryan, Circuit Judge, in the opinion, said:

"It is defendant's contention that a corporation which does what its charter authorizes it to do is liable for the corporation tax, and that the plaintiff, because it was authorized to hold title to the land, and was doing so with the expectation of selling at a profit, was engaged in business. If a corporation is not engaged in business, it cannot make any difference that what it is doing is authorized by its charter. Owning land is not doing business, nor is paying taxes. Most owners of land, whether corporations or individuals, would be willing to sell at a profit."

Another case very similar to the present one is Cannon v. Elk Creek Lumber Co., 8 F.(2d) 996, (C. C. A. 7th Ct.). The court, opinion by Alschuler, Circuit Judge, holding that the company was not taxable under the statute, said:

"Neither the hope that some day some one will come along and buy them out, and thus enable them to distribute the proceeds among the original bondholders, coupled with some effort to bring this about, nor the alternative hope that some time some one will supply them with sufficient capital to operate the properties, is being 'engaged in business' within the meaning of the quoted section." Section 1000(b), Revenue Act 1921.

The defendant has cited Edwards v. Chile Copper Co., 270 U. S. 452, 46 S. Ct. 345, 70 L. Ed. 678, in support of his position, and has called attention to the following from the opinion of Mr. Justice Holmes:

"The exemption 'when not engaged in

business' ordinarily would seem pretty nearly equivalent to when not pursuing the ends for which the corporation was organized, in the cases where the end is profit."

The Chile Copper Co. Case, with its intimation just quoted, unquestionably tends to limit the number of corporations "not engaged in business." But it is a case treating of the association of two corporations which was not the ordinary relation between a parent organization and a holding company, and was not designed to overturn all previous decisions of the court and the principles therein set forth. In the opinion Mr. Justice Holmes, for example, cites the Emery, Bird, Thayer Case, and distinguishes it, but does not overrule it. The decision would be unduly extended if it were to be held that it sets aside the declaration in Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, repeated in McCoach v. Minehill Railway Case, to the effect that the corporation tax was not imposed upon the franchises of the corporation, irrespective of their use in business, nor upon the property of the corporation.

The contention of the defendant herein, if upheld, would have the effect of making the taxing statute impose a direct tax upon the property of the corporation—a power not possessed by Congress unless apportioned to the states according to population.

In view of the fact that the testimony shows that the plaintiff company, during the taxable periods for which tax was paid, did not pursue its prime purpose of mining and marketing coal, and did not engage in any activity whatsoever other than the maintenance of its corporate existence and its ownership of property, it is our opinion that the plaintiff is entitled to judgment for the amount claimed in its statement.

Let an order in accordance with the foregoing opinion be drawn; also the customary certificate in cases brought against the collector of internal revenue.