**UNITED MERCURY MINES CO. v. VILEY, Collector of Internal Revenue.**

Nos. 1964, 1965.

District Court, D. Idaho, S. D.

Sept. 7, 1937.

Hawley & Worthwine, of Boise, Idaho, for plaintiff.

John A. Carver, U. S. Dist. Atty., and E. H. Casterlin and Frank Griffin, Asst. U. S. Dist. Attys., all of Boise, Idaho, for defendant.

CAVANAH, District Judge.

These are separate actions by the United Mercury Mines Company against John R. Viley, Collector of Internal Revenue for the District of Idaho, to recover capital stock taxes paid under protest for the years 1933 and 1934. A claim to have the taxes refunded was submitted to the collector of internal revenue, but repayment was denied.

The facts of the case are essentially similar and are not disputed. The plaintiff, an Idaho corporation, was organized on January 21, 1931, of an authorized capital of $1,200,000, which was subsequently reduced to $500,000. After its organization it acquired a group of mining claims situate in the Yellow Pine Mining District, in Valley County, Idaho, and expended a large sum of money in developing the properties. On August 5, 1927, it entered into an agreement with F. W. Bradley, granting to him a lease and option upon two of the large group of claims for $1,500,000. After that was done, Bradley, May 25, 1928, organized the Yellow Pine Company, and a final agreement was entered into between it and the United Mercury Mines Company in which all of the properties of the United Mercury Mines Company were included and a lease and option therefor given, and the purchase price was increased to $1,550,000. Under the agreement the Yellow Pine Company had, and did have, exclusive right to possess, operate, and extract ores and metals from the claims. The consideration of the agreement was that the Yellow Pine Company shall pay to the United Mercury Mines Company for its stockholders 20 per cent. of the net proceeds received from the metals and ores extracted from the claims, which was to be deposited with the escrow holder until the amount of $1,550,000, the purchase price, is paid, and when that is done the Yellow Pine Company is entitled to a deed executed by the United Mercury Mines Company. Further provision is made in the agreement that whenever the investment made by the Yellow Pine Company shall have been returned to it, thereafter 50 per cent. of the net proceeds derived from the operation shall be paid and applied on the purchase price.

The sole question presented by the record is whether the United Mercury Mines was "carrying on or doing business" during the years 1933 and 1934, when it paid capital stock taxes under protest. The tax provided for by the act is not imposed on the property nor franchise of the corporation, only on the "carrying on or do-

ing business" in a corporate capacity as authorized. Act June 16, 1933, § 215, 48 Stat. 207. Zonne v. Minneapolis Syndicate, 220 U.S. 187, 31 S.Ct. 361, 55 L.Ed. 428; McCoach, Collector of Internal Revenue, v. Minehill & Schuylkill Haven Railroad Company, 228 U.S. 295, 33 S.Ct. 419, 57 L.Ed. 842; United States v. Emery, Bird, Thayer Realty Co., 237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825; West End St. Ry. Co. v. Malley, Collector (C.C.A.) 246 F. 625; Lane Timber Company v. Hynson (C.C.A.) 4 F.(2d) 666, 40 A.L.R. 1448; State Line & S. R. Co. v. Davis (D.C.) 228 F. 246; Three Forks Coal Co. v. United States (D. C.) 9 F.(2d) 946; Fink Coal & Coke Company v. Heiner (D.C.) 26 F.(2d) 136.

■■ It is clear from the cases that the decision in each instance must depend upon its particular facts, and the fair test to be derived from a consideration of them is between a corporation which is still active and maintaining its organization for the purpose of profit and gain, and one which has reduced its activities to the mere holding and owning of property and the distribution of its avails and performing only acts necessary to continue that status. Under the facts, the United Mercury Mines Company comes within this rule where one has reduced its activities to holding and owning property and the distribution of its avails to its stockholders, for it had wholly parted with the control and management of its properties on October 3, 1930, when it delivered exclusive possession and management of its properties to the Yellow Pine Company, the purchaser thereof, and had not since then transacted any business. Its only authority left was to hold title subject to the payment of the purchase price under agreement and to distribute the proceeds thereof to its stockholders. The only business done by it during the taxable years was to keep up its corporate organization and to collect and distribute the purchase price of the properties received from its single lease and option to purchase. During the taxing years the Company did not exercise any, or put in force any other special corporate power in aid of any business.

In view of the fact that the evidence discloses that the United Mercury Mines Company, during the years 1933 and 1934, for which the tax was paid, did not engage in "carrying on or doing business" or pursue its prime purpose of mining, or engage in any activity other than the maintenance of its corporate existence and its ownership of property within the meaning of the act, the taxes under consideration were unlawfully imposed on the plaintiff, who is entitled to judgment for the amount prayed for in its complaint.